UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JAMES BOLAND, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 13-cv-1838 (KBJ) |
| PROVIDENCE CONSTRUCTION CORP., | ) ) ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM OPINION

Plaintiffs, fiduciaries of the Bricklayers & Trowel Trades International Pension Fund ("IPF") and the International Masonry Institute ("IMI" and, collectively, "Plaintiffs" or the "Funds"), filed this action against Defendant Providence Construction Corporation ("Defendant" or "Providence Construction") on November 21, 2013. (Compl., ECF No. 1.) In the complaint, Plaintiffs allege that Providence Construction failed to pay to the Funds the proper amount of contributions owed under the governing Collective Bargaining Agreements and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1145. (*See* Compl. ¶¶ 8-11.) Although properly and timely served with the complaint and summons, Defendant has failed to respond to the complaint; accordingly, the Clerk of Court entered default against Providence Construction on January 7, 2014. (*See* Clerk's Entry of Default, ECF No. 5.) Before this Court at present is Plaintiffs' motion seeking default judgment and monetary damages. (Mot. For Entry of Default J. & Incorporated Mem. in Supp. Thereof ("Pls.' Mot."), ECF No. 7.) Upon consideration of Plaintiffs' motion and the

attachments thereto, applicable case law, statutory authority, and the record of this case as a whole, this Court concludes that Plaintiffs' motion should be **GRANTED**. A separate order consistent with this opinion will follow.

## I. BACKGROUND

### A. The Parties

According to the facts alleged in the complaint, Providence Construction is a New York-based construction company that employs members of the International Union of Bricklayers and Allied Craftworkers (the "Union"). (*See* Compl. ¶¶ 5-6.) Providence Construction has entered collective bargaining agreements ("CBAs") with the Union and its local affiliate. (*Id.* ¶¶ 7-8; Decl. of David F. Stupar in Supp. of Pls.' Mot. for Default J. ("Stupar Decl."), ECF No. 7-1, ¶ 7; *see also* CBA 1, Ex. A to Compl., ECF No. 1-1; CBA 2, Ex. B to Compl., ECF No. 1-2.) Under the CBAs, and also pursuant to ERISA, Providence Construction is bound to pay certain sums of money for each hour that employees covered by the CBA work. (Compl. ¶¶ 7-12; Stupar Decl. ¶ 3; *see also* CBA 2 § 12 (referring to Hourly Wages).) To fulfill its obligations under the CBAs, Providence Construction is required to submit monthly reports calculating the amount due and to make monthly contributions to the Union. (CBA 2 § 12; *see also* Compl. ¶¶ 5-6; Stupar Decl. ¶ 7.)

Plaintiffs are multi-employer funds established pursuant to ERISA that provide pension and other benefits to Union-member employees who work in the construction industry under CBAs negotiated between Union affiliates and employers. (Stupar Decl. ¶ 3.) Participating employers, like Providence Construction, finance the benefits that the funds provide. (*Id.* ¶ 2.) The Funds' methods of collecting contributions and

disbursing benefits are governed generally by ERISA and specifically by their Plan and Trust Agreements and a set of procedures that the Funds' trustees adopted to direct collection of monies that contributing employers owe to the Funds. (*See id.* ¶¶ 1, 3-4; Compl. ¶ 12; General Collection Procedures of the Central Collection Unit ("Collection Procedures"), Attach. 1 to Stupar Decl., ECF No. 7-1, at 7.)

According to the CBAs, the Collection Procedures, and ERISA, employers are required to make monthly reports and contributions on the fifteenth day of each month. (Stupar Decl. ¶¶ 4-5.) The Funds are entitled to interest on any unpaid contributions at a rate of 15% per year. (Collection Procedures at 8, Item B.2; Compl. ¶ 12; Stupar Decl. ¶ 10.) *See also* ERISA Section 502(g)(2), 29 U.S.C. § 1132(g)(2)(D) (directing that "interest on unpaid contributions shall be determined using the rate provided under the plan").) The Collection Procedures further provide that, in the event that the delinquent contributions are not paid in the first instance and the matter is referred to counsel, the Funds may seek additional monies beyond the unpaid contributions themselves and the interest on those contributions. (*See* Collection Procedures at 8, Item II.A.) Specifically, Item II.A of the Collection Procedures provides for the higher of "an additional computation of interest" also at the rate of 15% per year, or liquidated damages at the rate of 20% of the contributions. (*Id.*) In addition, Item II.C of the Collection Procedures entitles the Funds to "all moneys recoverable from an employer, including damages that may be recoverable under Section 502(g)(2) of ERISA[.]" (*Id.* at 9, Item II.C.) ERISA Section 502(g)(2), in turn, provides that a court "shall award" the plan "reasonable attorneys' fees and costs of the action"—in other words, costs, audit expenses, and attorneys' fees that the Funds incur in seeking to collect unpaid

3

contributions owed under the CBA. *See* ERISA Section 502(g)(2), 29 U.S.C. § 1132(g)(2)(D).

**B. The Complaint**

In this action, the Funds allege that Providence Construction submitted all required reports calculating amounts due, but failed to submit related contributions for covered work performed during various months from February 2012 through April 2013. (Compl. ¶ 11; Stupar Decl. ¶ 8.) The Funds seek relief in the form of unpaid contributions, interest on unpaid contributions, and attorneys' fees and other litigation costs associated with this action, as well as an order directing Providence Construction to comply with its contribution obligations under the CBAs and to pay any judgments ordered in this action. (*See* Compl. at 5-6.)

The requested monetary damages are calculated with reference to the terms of the CBAs as well as the Funds' Collection Procedures and the guidance set forth in ERISA. According to Plaintiffs, pursuant to the reports that Providence Construction prepared and sent to the Funds, Providence Construction owes the Funds $10,544.23 in delinquent contributions for work performed during various months from February 2012 through April 2013. (Compl. ¶ 11; Stupar Decl. ¶ 8.) Applying the 15% interest rate set forth in the Collection Procedures (*see* Collection Procedures at 8, Item I.B.2) to the $10,544.23 of unpaid contributions that Providence Construction allegedly owes in this case, the Funds seek $2,160.32 in interest. (Stupar Decl. ¶ 10.)[1] In addition, the Funds

---

[1] The complaint sought only $1,662.01 in interest, while the instant motion for default judgment seeks $2,160.32. (*Compare* Compl. ¶ 12 *with* Stupar Decl. ¶ 10.) This increase is attributable to the fact that the complaint only assessed interest through November 2013, while the Funds' now request interest through March 2014. (*Compare* Compl. at ¶ 12 (seeking interest on unpaid contributions "calculated at the rate of 15 percent per annum from the Due Date through November 18, 2013") *with* Stupar Decl.

4

seek interest in the same amount, $2,160.32, in lieu of liquidated damages. (Stupar Decl. ¶ 11; *see also* Collection Procedures at 8, Item II.A.)[2] The Funds also seek to recover costs and attorneys' fees associated with this action. (Compl. at 5-6.) As set forth in the Declaration of David F. Stupar, the Executive Director of the IPF and an authorized representative to effect collections on behalf of the IMI, the Funds incurred legal costs in the amount of $400.00 for the filing fee and $327.00 for service of process in this case. (Stupar Decl. ¶¶ 12-13.) The Funds also seek attorneys' fees in the amount of $4,335.00. (*Id*. ¶ 14.)

In total, based on the $15,591.87 in delinquent contributions, interest, additional computation of interest, court fees, and service of process fees, along with the $4,335.00 in attorneys' fees, the Funds maintain that Providence Construction is obligated to pay a total of $19,926.87. (*See* Pls.' Mot. at 2; Stupar Decl. ¶ 16; Decl. of Charles V. Mehler III ("Mehler Decl."), ECF No. 7-2, ¶ 18.)

### C. Service And Default

The Funds served Providence Construction with the complaint and summons in this case on December 4, 2013. (Return of Service/Affidavit of Summons & Compl.

---

¶ 10 (seeking interest on unpaid contributions "calculated at the rate of 15 percent per annum from the Due Date of each payment through March 13, 2014").

[2] The complaint requests liquidated damages calculated at the rate of 20% per year pursuant to Item II.A of the Funds' Collection Procedures. (Compl. ¶ 12.) In their motion, and the declarations attached thereto, Plaintiffs make clear that they now opt for an additional computation of interest at the rate of 15% per year instead of liquidated damages. (Stupar Decl. ¶¶ 10-11; Decl. of Charles V. Mehler III in Supp. of Pls.' Mot. for Default J. ("Mehler Decl.") ¶ 4; *see also* Pls.' Mot. at 2 (seeking judgment in the amount of $19,926.87).) Because the Funds' governing Collection Procedures provide that the Funds may seek the higher of the two calculations—*either* additional interest *or* liquidated damages—Plaintiff may properly seek an additional computation of interest at this time, in lieu of the liquidated damages amount sought when the complaint was filed in November. (*See* Collection Procedures, ECF No. 7-1, at 8, Item II.A.)

5

Executed, ECF No. 3.)[3] When Providence Construction failed to file an answer within the time period allotted by Federal Rule of Civil Procedure 12(a)(1)(A), the Funds requested an entry of default. (Aff. for Default, ECF No. 4.) The following day, the Clerk of the Court entered default (Clerk's Entry of Default, ECF No. 5), and mailed a copy of the entry of default to Providence Construction. When that correspondence was returned to the court as undeliverable (ECF No. 6), the Clerk's Office mailed a second copy of the entry of default to Providence Construction on April 25, 2014.[4] More than three weeks have passed since the second entry of default was mailed, and Providence Construction has not sought to set aside default or otherwise defend itself in this action.

The Fund has now filed the instant motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). (Pls.' Mot. at 1.)[5] Although Providence Construction has been properly served with the complaint in this matter and presumably has also received the Funds' affidavit for default, the Clerk's entry of default, and the

---

[3] Plaintiffs' process server personally served the summons and complaint on an administrator authorized to accept service on behalf of Sailaja Chitta, the registered agent for Providence Construction. (*See* Decl. of Charles V. Mehler III in Supp. of Service of Summons & Compl., ECF No. 3, ¶ 2; Ex. 1 to Mehler Decl., Aff. of Service, ECF No. 3-1, at 3.) The Affidavit of Service lists the same address provided on Providence Construction's website. *Compare* Aff. of Service *with* Providence Construction Contact Information, www.providenceconstruction.us/contact-us/ (last visited May 27, 2014).

[4] The Clerk's Office mailed the first copy of the entry of default to the address for Providence Construction that was listed in the complaint. (*See* Compl. at 1.) The Funds' affidavit for default and motion for default judgment listed a different address. (*Compare* Compl. at 1 *with* Aff. for Default at 2 *and* Local Rule 7(k) Stmt. to Mot. for Default J., ECF No. 7-6, at 1.) When the first entry of default was returned as undeliverable, the Court directed the Clerk's Office to mail another copy to the second address.

[5] Rule 55 sets out a two-step process for a party seeking to obtain a default judgment. First, a plaintiff must ask that the Clerk of the Court enter default against "a party against whom a judgment for affirmative relief is sought [which] has failed to plead or otherwise defend" against an action. Fed. R. Civ. P. 55(a). Second, if the plaintiff's claim is not for a "sum certain," the plaintiff must apply to the court for a default judgment. *Id.* 55(b)(1)-(2). "This two-step process gives a defendant an opportunity to move to set aside a default before the court enters judgment." *Boland v. Elite Terrazzo Flooring, Inc.*, 763 F. Supp. 2d 64, 66 n.1 (D.D.C. 2011) (citing Fed. R. Civ. P. 55(c) and *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)).

Funds' pending motion for default judgment, it has failed to submit any pleadings or otherwise defend itself against this action as of the date of this order.

## II. Legal Standard

"A court has the power to enter default judgment when a defendant fails to defend its case appropriately or otherwise engages in dilatory tactics." *Boland v. Elite Terrazzo Flooring, Inc.*, 763 F. Supp. 2d 64, 66-67 (D.D.C. 2011) (citing *Keegel v. Key W. & Caribbean Trading Co.*, 627 F.2d 372, 375 n.5 (D.C. Cir. 1980)). Federal Rule of Civil Procedure 55(a) provides for entry of default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise[.]" Fed. R. Civ. P. 55(a). Once the Clerk enters default, Rule 55 authorizes the court to enter default judgment for the amount claimed and for costs. Fed. R. Civ. P. 55(b)(2). "The determination of whether default judgment is appropriate is committed to the discretion of the trial court." *Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC*, 531 F. Supp. 2d 56, 57 (D.D.C. 2008) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)). "Because courts strongly favor resolution of disputes on their merits, and because it seems inherently unfair to use the court's power to enter judgment as a penalty for filing delays, modern courts do not favor default judgment[,]" which "usually is available only when the adversary process has been halted because of an essentially unresponsive party[.]" *Elite Terrazzo Flooring*, 763 F. Supp. 2d at 67 (internal quotation marks omitted) (quoting *Jackson*, 636 F.2d at 835).

"Upon entry of default by the clerk of the court, the defaulting defendant is deemed to admit every well-pleaded allegation in the complaint." *Fanning v.*

7

*Permanent Solution Indus.*, 257 F.R.D. 4, 7 (D.D.C. 2009) (internal quotation marks and citation omitted).  Put another way, the clerk's entry of default alone is enough to establish the defendant's liability, but the court still retains discretion to determine whether default judgment is appropriate.  *See id.* (citing *Auxier Drywall*, 531 F. Supp. 2d at 57); *see also Elite Terrazzo Flooring*, 763 F. Supp. 2d at 67; *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) (citation omitted).

"Although the default establishes a defendant's liability, the court is required to make an independent determination of the sum to be awarded unless the amount of damages is certain."  *Permanent Solution Indus.*, 257 F.R.D. at 7 (quoting *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co., Inc.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002)).  "Accordingly, when moving for default judgment, the plaintiff must prove its entitlement to the amount of monetary damages requested" using "detailed affidavits or documentary evidence" on which the court may rely.  *Permanent Solution Indus.*, 257 F.R.D. at 7 (citing *Amrine Drywall*, 239 F. Supp. 2d at 30).  In practice, "[t]he court has considerable latitude in determining the amount of damages." *Elite Terrazzo Flooring*, 763 F. Supp. 2d at 67 (citation omitted).  The court may conduct a hearing regarding the scope of damages, Fed. R. Civ. P. 55(b)(2), but is not required to "as long as it ensure[s] that there [is] a basis for the damages specified in the default judgment."  *Elite Terrazzo Flooring*, 763 F. Supp. 2d at 67 (alterations in original) (quoting *Transatlantic Mar. Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997)).

### III. Analysis

"Where, as here, there is a complete absence of any request to set aside the default or suggestion by the defendant that it has a meritorious defense, it is clear that the standard for default judgment has been satisfied." *Permanent Solution Indus.*, 257 F.R.D. at 7 (internal quotation marks and citation omitted). As noted above, Providence Construction has failed to respond to the complaint, to the Funds' affidavit for default, to the Clerk's Office's entry of default, or to the Funds' motion for default judgment. Given the defendant's unresponsiveness, the court concludes that entry of default judgment would be appropriate in this case. *See, e.g.*, *Elite Terrazzo Flooring*, 763 F. Supp. 2d at 68 (concluding that the defendant was liable to the plaintiff because the defendant had failed to respond to the complaint or otherwise defend itself (citation omitted)). In accordance with standard procedures, the Clerk of Court has entered Providence Construction's default (*see* Clerk's Entry of Default, ECF No. 5), so this Court now accepts the factual allegations in the complaint—which are well-pled and undisputed—as true. *See Amrine Drywall*, 239 F. Supp. 2d at 30 (citation omitted). Accordingly, the Funds are entitled to default judgment as to Providence Construction's liability for its failure to make timely contributions to the Funds. *See Permanent Solution Indus.*, 257 F.R.D. at 7.

With liability established, the Court now must make an independent determination of the amount of damages due. *See id.* at 7; *Adkins*, 180 F. Supp. 2d at 17. Pursuant to the CBA, the Funds' Trust Agreements, and the applicable Collection Procedures, Providence Construction is obligated to pay (1) the total amount of outstanding unpaid contributions; (2) interest on the unpaid contributions at a 15% rate;

(3) the higher or either an additional interest calculation of the unpaid contributions at a 15% rate or liquidated damages in an amount 20% of the amount past due; and (4) related legal costs and fees. (Collection Procedures Item II.) ERISA echoes these requirements. *See* ERISA Section 502, 29 U.S.C. § 1132 (noting that employers are obligated to pay unpaid contributions, interest according to governing agreements, liquidated damages at a rate of 20% or as determined by governing agreements, legal costs and fees, as well as other such relief).

In support of its motion for default judgment, the Funds have provided the declarations of David F. Stupar, who is the Executive Director of the IPF and an authorized representative of the IMI, and Charles V. Mehler III, counsel for the Funds and an attorney with the law firm of Dickstein Shapiro LLP. Stupar's declaration details the amount of unpaid contributions, interest, and court costs that Providence Construction owes, based in large part on Providence Construction's own calculations of contributions due as submitted in their monthly reports. (*See* Stupar Decl. ¶ 8.)

Mehler's declaration similarly details the attorneys' fees that the Funds incurred as a result of their effort to recover the unpaid contributions. (*See* Mehler Decl. ¶ 15.) The Mehler Declaration states that, calculated at market rate and in accordance with the firm's normal billing rates, Plaintiffs' attorneys have accrued $4,335.00 in legal fees. (*Id.* ¶ 15.) The Mehler Declaration also reveals that the firm charged the Funds less than the firm's ordinary market rate in this matter—*i.e.*, it discounted its fees—for "public-spirited reasons[.]" (*See id.* ¶¶ 6-12.) Based on the representations made in the Mahler Declaration, this Court concludes that the Funds are entitled to an attorneys-fee award calculated at market rates, and that the market rate is reasonable. *See Bd. of Trs.,*

*Hotel & Rest. Emps. Local 25 v. JPR, Inc.*, 136 F.3d 794, 800-06 (D.C. Cir. 1998); *see also Flynn v. Pulaski Constr. Co.*, No. 02-2336, 2006 WL 3755218, at *2 (D.D.C. Dec. 19, 2009) ("[I]n this circuit, the court awards market rate attorneys' fees, where, as here, counsel provides a public-spirited discount to the ERISA plan." (citation omitted)).[6]

In sum, the declarations and materials attached thereto—which are appropriately considered in order to calculate the damages amount in a case in which default judgment is entered, *see Permanent Solution Indus.*, 257 F.R.D. at 7; *Amrine Drywall*, 239 F. Supp. 2d at 30—establish that the Funds have compensable damages and costs in the total amount of $19,926.87, which consists of $10,544.23 in unpaid contributions for work performed during various months from February 2012 through April 2013; $2,160.32 in interest on the unpaid contributions at a rate of 15% per annum calculated from the due date of each payment through March 13, 2014; an additional computation of interest in the amount of $2,160.32; $727.00 in legal costs and $4,335.00 in attorneys' fees for a total of $5,062.00 in costs and fees. (*See* Stupar Decl. ¶¶ 9-16.)

---

[6] Other courts in this district have awarded attorneys' fees at market rate to plaintiffs in ERISA cases represented by Dickstein Shapiro who have received public service discounts on the services provided. *See, e.g.*, *Boland v. Shoun-Allen Masonry, Inc.*, No. 13-cv-0086, Order Granting Default J., ECF No. 7 (D.D.C. May 7, 2013); *Flynn v. Brayman Hallow Masonry, Inc.*, No. 09-cv-0348, Order Granting Mot. for Att'y's Fees, ECF No. 23 (D.D.C. Apr. 13, 2011); *Flynn v. Dick Corp.*, 624 F. Supp. 2d 125, 130 (D.D.C. 2009); *Flynn v. Loring & Son Masonry Restoration, Inc.*, No. 09-cv-0918, Order Granting Default J., ECF No. 8 (D.D.C. Aug. 31, 2009); *Pulaski Constr. Co.*, No. 02-2336, 2006 WL 3755218, at *2 (D.D.C. Dec. 19, 2006), *entry of default vacated in part on other grounds by* 2006 WL 47304 (Jan. 6, 2006).

Therefore, pursuant to the terms of the CBA, the Funds' Trust Agreement and Collection Procedures, and 29 U.S.C. § 1132(g)(2), the Court finds that the Fund is entitled to a monetary judgment in the amount of $19,926.87.[7]

### D. Conclusion

For the reasons described above, the Court **GRANTS** Plaintiffs' motion for default judgment (ECF No. 7) and shall enter a judgment for Plaintiffs in the amount of **$19,926.87**. A separate order will follow.

Date: May 29, 2014

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge

---

[7] Although the complaint requests a total amount of $14,715.44, the Fund now seeks $19,926.87 given the increased amount of interest that has accrued between the filing of the complaint and the entry of default. *See supra* note 1.